EMILIE MACFARLANE *v.* ELIZABETH K. WILDER and C. L. WIGHT.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED OCTOBER 5th, 1898. DECIDED FEBRUARY 18, 1899.

WHITING, J., AND L. A. THURSTON, ESQ., AND J. T. DEBOLT, ESQ., OF THE BAR, IN PLACE OF JUDD, C.J., DISQUALIFIED AND FREAR, J., ABSENT.

The admission of relevant and competent evidence in surrebuttal is in the sound discretion of the trial court.

Evidence held sufficient to support the verdict.

OPINION OF THE COURT BY WHITING, J.

This is an action of ejectment for 2,570 square feet of land situate at Helumoa, Waikiki, Honolulu, Oahu. The jury

43

found a verdict for the defendant. The piece of property is a part of the land on the sea beach and of large value owing to the limited area of land suitable for seaside residence.

The charge of the Court states the case as follows:

"In this case plaintiff claims the piece of land in controversy * * * and claims that it is included within the boundaries of Royal Patent No. 166 of Land Commission Award 1281 issued to Kuluwailehua, and also within the boundaries of Royal Patent No. 7723 of Land Commission Award 228 issued to Kaleiheana, and that plaintiff now holds the documentary title to all the lands described in both these patents and awards. In other words, that the descriptions in those two patents and awards overlap on the piece in question; but that, as she now holds the title to all of the land granted under both these patents and awards, she is entitled to the piece of land in question, whether it was granted under Royal Patent No. 166 or Royal Patent No. 7723.

"On the other hand-the claim of the defendants is that the land in controversy is included within the boundaries of Land Commission Award 922 to Okuu, and that they now hold the documentary title to all the land granted under that award; and further, that whether or not the piece of land in question is within the boundaries of the Okuu award, that they and their predecessors, for more than twenty years before the commencement of this suit, held and occupied as their own the said strip of land, and that therefore they have now acquired title to the same by adverse possession. It is admitted by the parties that the plaintiff now holds the documentary title to all of the land now described in the Kuluwailehua award and the Kaleiheana award, and that defendants now hold the documentary title to all the land described in the Okuu award. The award to Kaleiheana was issued in 1848; that to Okuu in 1849, and that to Kuluwailehua in 1851.

"As between two awards which do in fact cover the same land, that award which was first issued passes the title to such land."

The Court then in proper language submitted the following questions to the jury:

1. If the land in dispute is included within the boundaries of the Okuu award, and is not included within the boundaries of the Kaleiheana award, then your verdict will be for the defendants, and you need not consider the question of adverse possession.

2. If the land in dispute is within the Kaleiheana award, then whether or not it be within the Okuu award, your verdict will be for the plaintiff, unless the defendants have title to the same by adverse possession.

3. If the land in dispute is within the Kuluwailehua award and not within the Okuu award, then there should be a verdict for the plaintiff, unless defendant has obtained title by adverse possession.

4. Adverse possession.

The Court instructed the jury fully upon the law of adverse possession, especially explaining the law applicable in this case upon the evidence presented.

(a) The element of hostility to the title of the true owner is an indispensable ingredient of adverse possession. There must be not only actual occupation, but also a claim of title hostile to that of the true owner. * * * If one holds the land under the true owner and admits the title of the true owner, his occupation is not hostile to it. * * * If the possession of defendants or their predecessors was, at its inception, permitted, that is, under the permission of the true owners, and then later on the defendants or those under whom they claim set up a hostile title, in such case the defense of adverse possession would prevail only in case twenty years had elapsed since such hostile title was set up prior to the commencement of the suit.

(b) In counting the time that adverse possession has been running, such possession by a tenant is counted as the adverse possession of the landlord.

"If therefore. Henry Macfarlane received possession of the strip of land in question from Okuu and as his tenant, then by virtue of his lease his possession thereafter until surrendered or at the termination of said lease, is to be counted as the adverse possession of Okuu, and after his death by his heirs or devisees. But if Henry Macfarlane did not receive possession of this strip of land from Okuu at the time of the lease, and Okuu had not before that time had possession of it, and if Henry Macfarlane got possession of the land solely by reason of the permission granted by Mrs. Bishop (the then grantee of the Kaleiheana and Kuluwailehua awards) in July or August, 1878, then the possession so held by him by virtue of such permission was not adverse and the defense of adverse possession would not prevail."

The main facts in dispute were as to the position of the mauka fence on the land when one Henry Macfarlane first leased from Okuu and whether or not it had been moved. The defendant's claim that the present fence is on the same line as when Henry Macfarlane formerly leased, and the plaintiff claims that Macfarlane moved the fence, when he took possession, mauka to a new line and built a new fence which is claimed to be the present fence and that this new fence was so built on the new mauka line by permission of Mrs. Bishop, the owner adjoining Okuu's land, so that the strip in question belonged to Mrs. Bishop and the possession by Henry Macfarlane being permissive, adverse possession could not run.

The lease to Henry Macfarlane from Okuu was put in evidence by the plaintiff in rebuttal.

The defense put in evidence in surrebuttal against the objection of the plaintiff, who took the following exceptions:

1. On the close of the evidence for the plaintiff in rebuttal, the defense called as a witness in rebuttal, W. A. Wall, a surveyor to whom defendant's attorney put the question, "Have you checked off and made a map of. the present lot of land occupied by Mrs. Wilder at the seashore?"

The defense also put in evidence two maps by Wall.

The plaintiff objected to the admission of this evidence as incompetent, irrelevant and not proper surrebuttal.

The object of the evidence was to show the plot of the land as now held by Mrs. Wilder and also the plot of the lot as leased by Okuu to Henry Macfarlane, and also the changes that had been made to the shore line by accretions and otherwise by the sea.

This evidence was relevant and competent, and whether it was proper to admit it in surrebuttal was a matter in the sound discretion of the trial court.

Further this evidence was admissible in surrebuttal because of the evidence brought out by Henry Macfarlane's testimony in rebuttal and also that of Mrs. Emma Macfarlane which related especially to location, metes and bounds, and alterations of the fences and fence lines which had been made by Henry Macfarlane. The trial court did not abuse its discretion.

2. Ninia, a witness for the defense was recalled to testify in rebuttal and was asked by the defendant the following question: "Mr. Macfarlane said he did not remember of ever having seen a house on the Ewa side of the round house, is that correct or not?"

This was objected to by the plaintiff as not being surrebuttal and no foundation having been laid for the question.

The full stenographic report on this is as follows:

Q. Mr. Macfarlane said he did not remember of ever having seen a house on the Ewa side of the round house, is that correct, or not?

Objected to as not being surrebuttal.

By the Court: "Any conversations between the two referring to the house, I will allow. I will allow this question." To which plaintiff excepted.

Q. Was Macfarlane present at any time with you near that house or in view of that house on the Ewa side; and has he seen that house ?

A. Yes sir, Mr. Macfarlane saw that house, and on account

of our land being leased to him, he said that we had better take that house for us and that was how we came to move it over to our place.

We cannot regard the purpose of this evidence to be to prove that the witness Macfarlane made a certain statement at a former time and by so doing to test his veracity, but rather to prove in fact that the house was there at that early period and that Macfarlane knew of it, as Macfarlane had testified that in his recollection there was no such house so located.

This does verge close onto the rule that if a witness upon cross-examination as to a former statement made by him does not distinctly admit that he did make the statement, it may be shown that he did, but before such proof can be given, the proper statutory foundation must be laid.

We do not regard the question and answer so objectionable as to constitute prejudicial error, or was substantial error such as would alter the verdict on a new trial. See *Perry v. Ludloff*, 8 Haw. 248. *Rex v. Haumea*, 8 Haw. 280.

The plaintiff excepted to the verdict as contrary to the law and the evidence and moved for a new trial on the same grounds.

We have carefully examined the evidence in the case, and find that there is evidence sufficient to support the verdict. The case was one of fact for the jury and the evidence as usual was very contradictory, and yet would support a verdict for either party. It cannot be reconciled so as to enable this Court to say that the jury erred in their verdict. The credibility of the witnesses and the weight of their testimony were matters for the consideration of the jury, and the issues were clearly put to the jury. The verdict cannot be set aside on this ground.

The exceptions are overruled.

*Cecil Brown* and *A. G. M. Robertson* for plaintiff.
*Kinney & Ballou* for defendant.